IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| vs. § | Case No.: 8:22-cr-366-VMC-MRM |
| § | |
| EDWARD FERRARO | |

## DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A REASONABLE SENTENCE

The Defendant, **EDWARD FERRARO**, by and through undersigned counsel and pursuant to 18 U.S.C. §3553(a), hereby files this sentencing memorandum and moves this Honorable Court for a downward departure and a downward variance to a sentence of probation which is no higher than necessary to accomplish the goals of sentencing. As grounds for granting this request, Mr. Ferraro respectfully submits the following:

1. On October 25, 2022, Mr. Ferraro was indicted on a single count of Theft of Government Funds in violation of 18 U.S.C. § 641.

2. On June 15, 2023, entered a plea without the benefit of a plea agreement to that single count. (Doc. 47).

3. The Presentence Report indicates as follows: Total Offense Level of 17 and a

1

criminal history category of I. Mr. Ferraro has no prior criminal history. The advisory guideline range is 24 to 30 months imprisonment and a term of one to three years of supervised release.

4. Mr. Ferraro is respectfully asking this Court to depart from that guideline range pursuant to U.S.S.G. §5H1.6 and to vary below the guideline range pursuant to 18 U.S.C. §3553(a) and sentence Mr. Ferraro to a term of probation. Mr. Ferraro contends that such a sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provided just punishment. It would afford adequate deterrence to criminal conduct, protect the public from further crimes of this defendant, and provides the most effective correctional treatment.

### I. PRESENTENCE INVESTIGATION REPORT

Undersigned Counsel and the Defendant do not object to the factual accuracy of the presentence investigation report ("PSR").

Undersigned Counsel and the Defendant do not object to the legal accuracy of the PSR, nor to the guidelines determinations therein.

## II.  BACKGROUND

Edward Ferraro has lived a life filled with tragedies most of us hope to never experience.  Born in 1974, Mr. Ferraro grew up in Connecticut without a father, who was killed in a car accident when Mr. Ferraro was very young.  Mr. Ferraro's mother remarried a man who physically and emotionally abused him as a child, straining his relationship with his own mother.  Mr. Ferraro's sister, his only sibling, died suddenly at the age of 12 due to a heart condition. This condition was only discovered after she fell unconscious and nearly drowned in the family pool.  Mr. Ferraro, himself only a child at the time, pulled his sister from the pool and performed CPR.  She passed away only a few days later.  This put an even greater strain on Mr. Ferraro's family, and his mother fell into a deep depression.

Mr. Ferraro joined the military as soon as he turned 18 in 1994.  He served on active military duty until 1998 and was honorably discharged from the Army Reserves in 2001.  Mr. Ferraro immediately joined the Department of Veteran's Affairs as a ratings specialist.  Shortly after beginning this job, the relevant criminal conduct began. Mr. Ferraro, then a young man, saw an opportunity to appropriate money from the government using his position and his close relationship with J.M., and made the foolish decision that led to this conviction.

Mr. Ferraro falsely used the identity of J.M. to apply for and receive VA

3

disability benefits that he appropriated for his own use. For many years, Mr. Ferraro told himself that the help he provided to J.M. justified this appropriation. In 2001, Mr. Ferraro married Heidi Ferraro, and in 2006 Heidi gave birth to the couple's only son, A.F. A.F. is a severely autistic young man. While he is extremely bright and intelligent, he is non-verbal and communicates with the aid of specialized software.

A.F.'s disability requires significant amounts of physical, educational, and emotional care. For most of A.F.'s life, Heidi Ferraro provided that care as a stay-at-home parent while Mr. Ferraro worked. After A.F. was born, Mr. Ferraro told himself that his illegal activity was justified because the extra income allowed his wife to stay home and care for A.F. and allowed him to afford A.F.'s therapy.

In 2020, the Ferraro family suffered another tragedy. Heidi Ferraro was diagnosed with an aggressive cancer, and after a brief battle passed away. Mr. Ferraro was thrust into the role of A.F.'s sole caretaker and provider. Two years later, Mr. Ferraro was indicted and arrested for these charges. This prosecution has made Mr. Ferraro come to terms with the fact that there is no justification for his actions. In acknowledgement of that fact, Mr. Ferraro has made efforts to repay the restitution nearly in full. While it took 20 years for him to illegally obtain the ill-gotten-gains in this matter, Mr. Ferraro has paid a huge portion of the restitution by emptying his retirement accounts and mortgaging his home, which is he is also likely to lose due to

the Government's forfeiture.

At this stage, Mr. Ferraro's sole focus is on the well-being of his son. He has fully accepted responsibility for his actions, but hopes that this Court will show him leniency so that the consequences of his actions do not strip his son of his only immediate family member and his primary caretaker.

### III. MOTION FOR DOWNWARD DEPARTURE §5H1.6

Family ties and responsibilities are *not* ordinarily relevant to determine whether a departure from the sentencing guidelines are warranted. However, U.S.S.G. §5H1.6 provides that family circumstances and responsibilities can justify guidelines departures when those circumstances are extraordinary. *U.S. v. Gaskill*, 991 F.2d 82, 85 (3rd Cir. 1993) (remanding for district court's underestimation of it's power to depart under §5H1.6).

Mr. Ferraro's family responsibilities are extraordinary. Mr. Ferraro's 17 year old son A.F. is severely autistic and non-verbal. For most of A.F.'s life, Mr. Ferraro worked, and his mother stayed home to provide care for A.F. This arrangement came crashing down when A.F.'s mother passed away. Since then, Mr. Ferraro has acted as A.F.'s sole caretaker, and intends to continue in that role well into A.F.'s adulthood.

On top of caretaking duties for his own son, Mr. Ferraro has taken an active role in the autistic community. He hosts events and social gatherings for other families with

autistic children. His vigorous and active role in this community has reaped great benefits for his own son, whose social life has flourished. The social growth of A.F. has benefited his educational and physical growth, though the severity of his disabilities still make it likely that A.F. will need care and supervision into adulthood.

Should Mr. Ferraro be incarcerated for a significant period of time, there are few alternatives available to him to provide continuing care for A.F. All of those alternatives pass a huge burden to innocent parties. While Mr. Ferraro has a live-in girlfriend, she has no legal relationship with A.F. and Mr. Ferraro does not expect her to take on the responsibility of caring for A.F. if he is unavailable. Mr. Ferraro maintains a close relationship with A.F.'s maternal grandmother, Jan Mark, who does take some caregiving responsibilities for A.F. But Ms. Mark is 70 years old, has had her own bouts with cancer, and would suffer substantial hardships if forced to shoulder the sole burden of caring for A.F.

U.S.S.G. §5H1.6 provides courts with detailed application notes to consider when determining the applicability of a departure under the policy statement. First, courts should consider the seriousness of the offense, the involvement of any family members in the offense, and the danger to any of the defendant's family as a result of the offense. While Mr. Ferraro's offense of conviction is a serious financial offense, it is a nonviolent one that did not involve any of his family members. None of Mr.

Ferraro's family members were placed in any danger as a result of the offense.

U.S.S.G. §5H1.6 Application Note 1(B) also requires courts to find the existence of three factors to determine if a departure is warranted due to the loss of caretaking or financial support.

First, a court must fined that "[t]he defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family." Again, Mr. Ferraro is the primary caretaker for A.F., who is not expected to ever fully be able to care for himself or integrate into society. A.F.'s mother is deceased, and there are no other close family members available to assume A.F.'s caretaking duties.

Second, "[t]he loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration." Mr. Ferraro's case is one that goes beyond the typical loss of support and general caretaking duties applicable to most families. A.F. requires specialized support, and will continue to require it even as an adult. Loss of Mr. Ferraro's caretaking would likely result in A.F. going into the custody of his

maternal grandmother, who is 70 years old, or potentially becoming a ward of the State. Mr. Ferraro is prepared to make any arrangements to avoid the latter result, but the removal of his caretaking ability would clearly cause a substantial harm to A.F., and would incur a burden on the innocent party replacing his caretaking duties.

Third, "[t]he loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family." Mr. Ferraro's support is not replaceable by any other reasonable means. Courts have held that a departure under this theory is inapplicable where caretaking duties are shared equally, or where the defendant is not the primary caretaker. *See U.S. v. Young*, 105 Fed.Appx. 926, 928 (9th Cir. 2004) (defendant was not an irreplaceable caretaker where siblings were in a similar position to care for defendant's ailing mother); *U.S. v. Smith*, 331 F.3d 292 (2nd Cir. 2003) (departure not warranted where defendant's wife could take on defendant's caretaking duties of two year old son). In contrast, Mr. Ferraro is A.F's irreplaceable caretaker. Mr. Ferraro's only sibling died at the age of 12. Mr. Ferraro's father is deceased. Mr. Ferraro's mother has little experience caring for A.F. and resides with Mr. Ferraro's stepfather, who physically and emotionally abused Mr. Ferraro as a child. *See U.S. v. Marine*, 94 Fed.Appx. 307, (affirming defendant's 10 level departure under §5H1.6 where defendant was sole caretaker of three children

after the incarceration of the other parent); *U.S. v. Husein*, 478 F.3d 318 (6th Cir. 2007) (departure warranted where defendant was sole realistic caretaker of ailing father)

Finally, "[t]he departure effectively will address the loss of caretaking or financial support." A departure to a short term of incarceration or to probation would effectively maintain the caretaking status quo, in that Mr. Ferraro would be able to remain A.F.'s caretaker. Mr. Ferraro's circumstances meet all of the factors enumerated by the application notes of §5H1.6. Mr. Ferraro therefore respectfully requests that the Court grant a departure below the applicable guidelines to a term of probation.

### IV. MOTION FOR DOWNWARD VARIANCE 18 U.S.C. § 3553(a)

#### a. §5H1.6 Factors

Should this Court deem it inappropriate to depart based on §5H1.6, the Court can take the same factors into consideration to grant a variance below the guidelines. *See U.S. v. Gooch*, 2:20cr155-MHT (M.D. Alabama 2022) (court varied below guidelines based on policy statement in §5H1.6); *U.S. v. Lehmann*, 513 F.3d 805, (8th Cir. 2008) (variance based on §5H1.6 factors from guideline range of 37 to 46 months to probation was reasonable due to exceptional family circumstance).

#### b. Pre-Payment of Restitution

Pursuant to 18 U.S.C. § 3553(a)(7), the Court may consider during sentencing

the need to provide restitution to any victims of the offense. Mr. Ferraro expects that a restitution order in the amount of $566,342.94. Prior to sentencing, Mr. Ferraro emptied his retirement accounts and took a mortgage loan on his home in order to make a pre-payment to the clerk in the amount of $500,000, representing an 88% payment of the outstanding restitution.

Mr. Ferraro has been convicted of appropriating th4 $566,342 over a period of about 20 years. He illegally obtained around $28,000 each year of the criminal offense. Since his plea, Mr. Ferraro, who is by no means a wealthy man, took extraordinary measures to pay back the restitution from the government. He has succeeded in paying the vast majority of that restitution. This Court has additionally granted the Government's request for a preliminary forfeiture order in the amount of $566,342, and a substitute forfeiture order authorizing the seizure of Mr. Ferraro's home, which is valued at over $600,000. Any shortfall in the restitution pre-paid my Mr. Ferraro can and will be paid by him over a period of time determined by this Court, or be covered by the proceeds of the forfeiture.

"Forfeiture, in contrast [to restitution], is punitive, it seeks to disgorge any profits that the offender realized from his illegal activity." *U.S. v. Webber*, 536 F.3d 584, 603 (7th Cir. 2008). Mr. Ferraro will feel the full force of the Government's power to seek both restitution and forfeiture. He has made great efforts to pay back the money

appropriated from the Department of Veteran's Affairs, and in all likelihood will lose his home to the Department of Justice. Pursuant to U.S.S.G. § 3553(a), courts shall impose sentences sufficient but not greater than necessary to punish the defendant for the offense, deter conduct, and protect the public. A probationary sentence in this matter after considering Mr. Ferraro's efforts to repay the unlawfully appropriated money and the punitive forfeiture, is a sufficient sentence.

V. **REQUEST FOR SELF SURRENDER**

Should this Court make a final determination that a term of imprisonment is the appropriate sentence, Mr. Ferraro requests a reasonable period of time to surrender himself to the Bureau of Prisons. As discussed earlier in this memorandum, Mr. Ferraro's son requires specialized care for which Mr. Ferraro is the sole caregiver. Mr. Ferraro would request a reasonable period of time to facilitate a transfer of guardianship and organization of care for his son before being remanded to custody. Undersigned counsel has conferred with AUSA Rachel Jones regarding this request, and the Government has no objection.

*/s/ Nicholas Chotos*
NICHOLAS CHOTOS, Esquire

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically filed with the United States District Court Clerk of Court via the CM/ECF system which will send a notice of electronic filing to the Office of the United States Attorney, this 27th day of October 2023.

*/s/ Nicholas Chotos*
NICHOLAS CHOTOS, Esquire
Hanlon Law, P.A.
210 Pierce St.
Tampa, Florida 33602
Tel: (813) 228-7095
Email:
nick@tampadefenseattorney.com
Florida Bar Number: 112871
Attorney for Defendant